# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| ROBERT FREEMAN, JOHNNY DAVIS, | ) |  |
| BILLY DISHMAN, AND LABRON LUKE, | ) |  |
|  | ) |  |
| **Plaintiffs,** | ) |  |
|  | ) | **Case No. 3:12-cv-0266** |
| **v.** | ) | **Judge Sharp / Knowles** |
|  | ) |  |
| SONYA TROUTT, SONNY WEATHERFORD, | ) |  |
| AND SOUTHERN HEALTHCARE,[1] | ) |  |
|  | ) |  |
| **Defendants.** | ) |  |

## REPORT AND RECOMMENDATION

This matter is before the Court upon a Motion for Summary Judgment filed by Defendant Southern Health Partners ("SHP"). Docket No. 103. In support of its Motion, Defendant SHP has contemporaneously filed a Supporting Memorandum of Law (Docket No. 104), a Concise Statement of Undisputed Facts (Docket No. 103-1), and the Affidavits with Exhibits of Krystal Souders (Docket No. 103-2) and Sonya Troutt (Docket No. 103-3).

Plaintiffs have not filed a Response to the instant Motion or to the Concise Statement of Undisputed Facts, nor have they filed their own Statement of Undisputed Facts.

Plaintiffs filed this pro se, in forma pauperis action pursuant to 42 U.S.C. §1983, generally alleging that Defendants violated their Eighth Amendment rights by being deliberately indifferent to their serious medical needs because medical care conditions at the Sumner County

---

[1] Plaintiffs' Complaint incorrectly names "Southern Healthcare" as a Defendant. "Southern Healthcare" actually refers to Southern Health Partners.

Jail ("Jail") present a serious health risk to themselves and to the Jail inmates at large. Docket No. 1. Plaintiffs sue Jail Administrator Sonya Troutt and Sheriff Sonny Weatherford in their official capacities, and also sue Southern Health Partners. [2] *Id.* Plaintiffs seek compensatory and punitive damages. *Id.*

Defendant SHP filed the instant Motion for Summary Judgment and supporting materials on October 30, 2013, arguing that it is entitled to Summary Judgment because Plaintiffs have adduced no evidence that: (1) the alleged constitutional violations resulted from an official SHP custom or policy; (2) SHP was deliberately indifferent to a serious medical need; and (3) they exhausted their administrative remedies. Docket Nos. 103-04. Defendant SHP additionally notes that Plaintiffs have made "very general allegations about the medical treatment provided to inmates at the Jail; they do not claim that they have actually suffered any particularized personal injury but instead claim that certain conditions at the Jail relating to medical care present a serious health risk." Docket No. 104, p. 1-2.

As has been noted, Plaintiffs have not responded to the instant Motion or supporting materials.

For the reasons discussed below, the undersigned finds that there are no genuine issues as to any material fact and that Defendant SHP is entitled to judgments as a matter of law. Accordingly, the undersigned recommends that the instant Motion for Summary Judgment be GRANTED.

---

[2] Plaintiff originally additionally sued Chassity Pilcher and Mahailiah Hughes. Docket No. 1. Plaintiff's claims against Defendants Pilcher and Hughes were dismissed by Judge Sharp in an Order entered on June 20, 2012, and Defendants Pilcher and Hughes were terminated as parties in this action. *See* Docket No. 31.

Sonya Troutt is a duly authorized Custodian of Records, and she has the authority to certify the records of the Sumner County, Tennessee, Sheriff's Department. Docket No. 103-3, Affidavit of Sonya Troutt ("Troutt Aff."), ¶ 2. Exhibit A to the Affidavit of Sonya Troutt ("Exhibit A") is a true and correct copy of the Inmate Rule Book of the Sumner County Sheriff's Department, which sets forth the Jail's grievance procedure. *Id.*, ¶ 3. Exhibit A was maintained by personnel of the Sumner County Sheriff's Department in the ordinary course of business, and the entries therein were made at or near the time of the act, condition, or event described therein. *Id.*, ¶ 4. Exhibit B to the Affidavit of Sonya Troutt ("Exhibit B") is a true and correct copy of all grievances submitted to Jail staff by Plaintiffs between December 1, 2011 and May 20, 2013, and was maintained by personnel of the Sumner County Sheriff's Department in the ordinary course of business, and the entries therein were made at or near the time of the act, condition, or event described therein. *Id.*, ¶¶ 5, 6.

Krystal Souders, R.N. ("Nurse Souders") earned her LPN degree in 1994 from Bevill State Community College in Hamilton, Alabama, and her BSN degree in 2012 from Excelsior University in New Albany, New York. Docket No. 103-2, Affidavit of Krystal Souders ("Souders Aff."), ¶ 2. She has been licensed as a Nurse by the State of Tennessee since approximately 1994, and, at the time of the execution of her Affidavit, she had been employed by Defendant SHP for approximately 9 years and 8 months. *Id.* Throughout the course of her employment with SHP, she has held the positions of Medical Team Administrator at two jail

---

[3] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

facilities, Regional Administrator, Regional Director, and, at the time of the execution of her Affidavit, she held the position of Vice President of Operation over SHP jail facilities in Texas, Mississippi, Tennessee, and parts of Kentucky. *Id.*

All nurses employed by SHP who work at the Jail meet all of the criteria for licensed nurses in the State of Tennessee, and are duly licensed by the State of Tennessee. *Id.*, ¶ 18.

Health care in the Jail is provided under the direction of a Medical Team Administrator ("MTA") and a Medical Director ("MD"). *Id.*, ¶ 3. During all times relevant to the case at bar, Amy Cline, R.N., was the MTA and Dr. Kenneth Mathews was the MD. *Id.*

A true and correct copy of the SHP Policy and Procedure Manual is kept in the Jail Medical Office at all times. *Id.*, ¶ 5. All SHP medical personnel are required to review and follow the procedures in the manual. *Id.*

During all times relevant to the case at bar, it has been the policy of SHP that when an inmate is booked into the Jail, he or she is administered an intake/receiving screening by Jail personnel at the time of the commitment, or within 24 hours of commitment, and that, within 14 days of commitment, they receive a complete history and physical examination, performed by trained, authorized, and licensed SHP medical staff. *Id.*, ¶¶ 8, 9. At the time an inmate is booked into the Jail, they are asked questions about current illnesses, health problems, and conditions. *Id.*, ¶ 8. Observations regarding the inmate's behavior, body deformities, and general physical and mental conditions are noted. *Id.* Inmates with injuries are treated immediately upon commitment. *Id.* During the inmates' complete history and physical examination, special medical needs are identified and ongoing treatment care plans are established. *Id.*, ¶ 9. Chronic care inmates are referred to a physician, and laboratory or

diagnostic testing is ordered, if needed. *Id.* All medical history and physicals are referred to the MD for review. *Id.*

Also at all times relevant to the case at bar, it has been the policy of SHP that when an inmate is booked into the Jail, inmates are also screened for psychiatric illnesses. *Id.*, ¶ 8. In the case of acute illness (such as suicide), the inmate will be housed under close observation and referred for mental health treatment to a Psychiatric RN or Psychiatrist. *Id.* When clinically indicated, an immediate referral must be made to medical staff. *Id.*

During all times relating to the instant lawsuit, it has been SHP policy that all inmates have the opportunity daily to request health care. *Id.*, ¶ 10. If an inmate requires routine medical care, he or she obtains an inmate Sick Call Slip from the corrections officer on duty in the housing unit and that slip is provided to the medical staff for action. *Id.* Routine sick calls are conducted by medical staff inside the housing unit. *Id.* Inmate requests for mental health treatment are initially handled by SHP nurses. *Id.*, ¶ 11. In the event that an inmate needs additional mental health treatment, they may be referred to the MD and/or a mental health staff member who is authorized and trained to perform such function. *Id.* Those inmates who require mental health services beyond the capabilities of the facility may be referred to a psychiatrist or local mental health agency for evaluation. *Id.* In the event of critical presentation, Mobile Crisis mental health services may be contacted. *Id.*

Nurses at the Jail are not authorized to prescribe medication; therefore all of Plaintiffs' medication requests were forwarded to the MD, whose prescribing and dosage instructions were followed by medical personnel at the Jail. *Id.*, ¶ 12. Medication in the Jail is provided to inmates only by medical staff. *Id.*, ¶ 13. The nurse on duty is accompanied by a corrections

officer to each pod. *Id.* The nurse stands at the door, but does not enter the pod. *Id.* Inmates due to receive medication form a line, each holding a cup of water. *Id.* As each inmate's name is called, he or she approaches the nurse, identifies himself or herself, and is provided medication by the nurse. *Id.* The inmate must take the medication in the nurse's presence. *Id.*

During all times relevant to the instant action, it has been the policy of SHP that inmates with sores or rashes are housed in the general population unless the sores or rashes are infected, draining, or contagious. *Id.*, ¶ 14. Open wounds that are not infected are kept covered and are treated by SHP personnel. *Id.* Open wounds that are infected and/or draining are cultured by medical personnel to determine whether the wound is infected with staph or MRSA. *Id.* The cultures are sent to a medical laboratory, and appropriate antibiotic treatment is initiated. *Id.* Inmates diagnosed with active staph or MRSA infections are not housed with the general jail population. *Id.* Any inmate with a draining wound is medically segregated from the general jail population and assigned to the wound care clinic until the wound stops draining and is no longer infected. *Id.*

During all times relevant to the case at bar, it has been SHP's policy that if an insect or spider bite becomes an infected wound, SHP medical personnel will treat it in accordance with the procedures in the SHP Policy Manual, as set forth above. *Id.*, ¶ 15.

Because it is not medically necessary to quarantine inmates who are infected with Hepatitis A, SHP does not medically isolate those inmates. *Id.*, ¶ 16.

During all times relevant to the case at bar, it has been SHP's policy that inmates who are determined to be a serious suicide risk are placed on "suicide watch." *Id.*, ¶ 17. They are placed in a smock and isolated in a secure cell that has been stripped of any items which might be used

to cause themselves harm, and observed every 5 minutes by Jail personnel, who document their observations on a written form. *Id.* Inmates on suicide watch are immediately referred to a mental health provider, and removed from suicide watch only when SHP personnel have deemed it safe to do so and have authorized the removal. *Id.*

To the knowledge of Nurse Souders, during all times relevant to the case at bar, SHP has had no practices or policies that violate HIPAA, or that allow HIPPAA to be violated. *Id.*, ¶ 19.

Nurse Souders has reviewed Plaintiffs' inmate medical records and determined that Plaintiffs have received medical attention in response to every Sick Call request slip they have submitted, for every medical complaint they have made. *Id.*, ¶ 20. None of the Plaintiffs have filed any medical grievances concerning the medical care they received from SHP medical personnel at the Jail. *Id.*, ¶ 21.

Based upon her education, training, and experience, it is the opinion of Nurse Souders that: (1) all treatment provided by SHP medical personnel to Plaintiffs, and to the other inmates at the Jail, has been within the recognized standards of acceptable professional practice for nurses in the community of Sumner County, Tennessee; (2) no policy, practice, action, or inaction on the part of SHP or its employees has proximately caused any injury to Plaintiffs, or to any other inmate at the Jail; and (3) on no occasion have Plaintiffs, or other inmates at the Jail, been at risk of serious harm, nor has any SHP medical personnel been indifferent to any complaint that they have made. *Id.*, ¶ 22.

### III.  Analysis

### A.  Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

Each party opposing a motion shall serve and file a response, memorandum, affidavits, and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant SHP filed the pending Motion on October 30, 2013. Docket No. 103.

Plaintiffs have failed to respond to the instant Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

c. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant ...

. . .

g. Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiffs have failed to respond to Defendant SHP's Concise Statement of Undisputed Facts (Docket No. 103-1). Pursuant to Local Rule 56.01(g), Plaintiffs' failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant SHP is entitled to a judgment as a matter of law.

**B. Summary Judgment Standards**

It would be inappropriate to grant Defendant SHP's Motion solely on the ground that Plaintiffs have failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the
> movant simply because the adverse party has not responded. The
> Court is required, at a minimum, to examine the movant's Motion
> for Summary Judgment to ensure that he has discharged [his
> initial] burden ... The federal rules require that the party filing a
> Motion for Summary Judgment "always bears the burden of
> demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant SHP has met its

burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the

burden of proving the absence of a genuine issue as to material fact concerning an essential

element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548,

2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.

1989). In determining whether the moving party has met its burden, the Court must view the

evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v.

Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere

allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise,

must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party,

however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C. 42 U.S.C. § 1983**

**1. Generally**

Plaintiffs allege violations of their Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of

acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**2. Eighth Amendment**

**a. Generally**

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

**b. Deliberate Indifference To Serious Medical Needs**

The State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated. *Estelle,* 429 U.S. at 104, 97 S. Ct. at 291.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle,* 429 U.S. at 104. This is true "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05.

Not every prisoner's allegation of inadequate medical treatment, however, is a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105. For instance, courts have held that the accidental, inadvertent, or negligent failure to provide adequate medical care does not state such a claim. *Id.* at 105-06 (citations omitted).

Pursuant to Supreme Court precedent, the Sixth Circuit held, in *Hunt v. Reynolds*, that Eighth Amendment deliberate indifference claims must contain both an objective component, "that [plaintiff's] medical needs were sufficiently serious," and a subjective component, "that the defendant state officials were deliberately indifferent to the plaintiff's needs." 974 F.2d 734, 735 (6th Cir. 1992) (citations omitted).

In order to satisfy the objective requirement, the Supreme Court requires that an inmate demonstrate evidence of a current harm or evidence of a medical complaint or condition of confinement that "is sure or very likely to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). Under the Eighth Amendment, inmate plaintiffs, must allege, at the very least, unnecessary pain or suffering resulting from prison officials' deliberate indifference. *Id.* (prisoner alleging that he suffered pain and mental anguish from delay in medical care states a valid Eighth Amendment claim).

As for the subjective element, the Sixth Circuit has held that "a determination of

deliberate indifference does not require proof of intent to harm." *Weeks v. Chaboudy*, 984 F.2d

185, 187 (6th Cir. 1993).  There must, however, be a showing of deliberate indifference to an

inmate's serious medical needs.  *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988)

(*citing Westlake v. Lucas*, 537 F. 2d 857, 860 n. 3 (6th Cir. 1976)).  In fact, "[k]nowledge of the

asserted serious needs or of circumstances clearly indicating the existence of such needs, is

essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d

653, 660 (6th Cir. 1994) (citations omitted).  The inquiry, therefore, according to the Sixth

Circuit, is "[w]as this individual prison official aware of the risk to the inmate's health and

deliberately indifferent to it?" *Thaddeus-X*, 175 F.3d at 402 (*citing Farmer v. Brennan*, 511 U.S.

825, 837, 844, 114 S. Ct. 1970, 1979, 1982-83, 128 L. Ed. 2d 811 (1994)).

## D.  The Case at Bar

As an initial matter, it is undisputed that no policy, practice, action, or inaction of SHP or

its employees has caused any injury to Plaintiffs.  Souders Aff., ¶ 22.  For this reason alone,

Plaintiffs' cannot prevail against Defendant SHP on their § 1983 claims, and Defendant SHP is

entitled to a judgment as a matter of law.

Moreover, it is undisputed that Plaintiffs have received medical attention in response to

every Sick Call request slip they have submitted, for every medical complaint they have made.

*Id.*, ¶ 20.  Additionally, Plaintiffs have adduced no evidence that they suffered from any serious

medical need.  Accordingly, Plaintiffs cannot establish that Defendant SHP was deliberately

indifferent to their serious medical needs.

## IV.  Conclusion

For the foregoing reasons, the undersigned concludes that, viewing all the facts and

inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and Defendant SHP is entitled to a judgment as a matter of law. The undersigned therefore recommends that the instant Motion for Summary Judgment (Docket No. 103) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge